IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| American Modern Home Insurance Co., | ) |
| | ) C/A No. 2:10-CV-0505-MBS |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) **ORDER** |
| John Newsome, Jr.; John Newsome, III; | ) |
| John Newsome, Inc.; and the Estate of | ) |
| Deagose Fertron Robinson, | ) |
| | ) |
| Defendants. | ) |
| | ) |

This declaratory judgment action concerns the meaning and applicability of a marine insurance policy. The action was filed on March 3, 2010 and is properly before the Court pursuant to its federal admiralty and maritime jurisdiction. 28 U.S.C. § 1333(1). On January 11, 2011, Plaintiff American Modern Home Insurance Company ("Plaintiff") filed a motion for summary judgment. See ECF No. 42. After hearing argument from the parties on April 27, 2011, the Court GRANTED Plaintiff's motion. This order sets forth the reasons for the Court's ruling.

I.     **BACKGROUND**

Defendant John Newsome, Jr. ("Mr. Newsome") owns John Newsome, Inc. ("JNI"), which in turn owns and operates a car dealership and "parts warehouse" in Hartsville, South Carolina. Am. Compl. ¶¶ 9, 10, ECF No. 11; Newsome Defs.' Answer ¶ 5, ECF No. 18. On or about May 11, 2009, representatives of JNI attended an auction reserved for commercially licensed dealers, where they purchased a 2004, 38-foot Cigarette Top Gun TS power speedboat (the "Vessel"). Am. Compl. ¶¶ 14, 15, ECF No. 11; Newsome Defs.' Answer ¶ 5, ECF No. 18. The Vessel's purchase price was

1

paid for with a check drawn on JNI's account and, at all times since its purchase, JNI has been the sole legal owner of the Vessel. Am. Compl. ¶¶ 16, 17, ECF No. 11; Newsome Defs.' Answer ¶ 5, ECF No. 18; Mr. Newsome's Resp. To Requests To Admit ¶ 9, ECF No. 42-7.

At his examination under oath ("EUO"), Mr. Newsome testified that the Vessel was purchased with the intention of "fix[ing] it up a little bit," so that it could be sold for "a nice profit." Newsome EUO 17:9–18, ECF No. 42-2. To this end, Mr. Newsome took the Vessel to be serviced at MER Performance Marine ("MER") in Little River, South Carolina. See Am. Compl. ¶ 19, ECF No. 11; Newsome EUO 14:5–15:23, ECF No. 42-2. MER put over $30,000 worth of work into the Vessel, which included significant engine work. See generally Marine Service Orders, ECF No. 42-4.[1] MER's work was completed on or around August 20, 2009. See Marine Service Order #2197, ECF No. 42-4 at 11.

Sometime after its purchase, Mr. Newsome instructed his secretary, Virginia Adams, to obtain insurance for the Vessel. Newsome EUO 17:24–18:4, ECF No. 42-2. Ms. Adams completed, and on August 31, 2009 Mr. Newsome signed, the two-page insurance application that was submitted to Plaintiff (the "Application"). See id. at 18:25–20:2; see also Application 2, ECF No. 42-5. The Application identified "John Newsome" as the sole owner and operator of the Vessel. Application 1, ECF No. 42-5. By signing the Application, Mr. Newsome affirmed that, inter alia, the Vessel would not be used for any business or commercial use; the Vessel's motor had not been

---

[1] Plaintiff submits that, originally, the Vessel was "powered by two inboard, v-block, naturally aspirated, gasoline-powered reciprocating engines manufactured by Merlin, factory rated at 525 horsepower per engine, totaling 1,050 horsepower." Pl.'s Summ. J. Mot. 3, ECF No. 42-1. After MER completed its work, "the engine performance curves generated by testing the engines on MER's dynamometer, showed that the engines developed 741 peak horsepower and 816 peak horsepower, respectively, for a total output of 1,557 horsepower." Id.

2

modified or altered from the original manufacturer's specifications to increase the top speed; the Vessel was not held for sale or consignment; the Vessel was not owned in whole or in part by anyone other than Mr. Newsome; and the Vessel was not titled in the name of a company or corporation. Id. at 2. Mr. Newsome further affirmed "that the information provided is true to the best of my knowledge," that "no material information has been withheld," and that he understood "that the discovery of any material misrepresentations or omissions in this Application may result in a change in the premium charge for my policy, or may cause my policy to be cancelled or voided." Id.

Based on that Application, Plaintiff issued a watercraft policy in the name of John Newsome for a one-year term beginning on August 31, 2009 (the "Policy"). Policy Declarations 1, ECF No. 42-6 at 1. The Policy provides that: "[Plaintiff] will pay for **bodily injury** and **property damage** for which an insured person is legally liable. The **bodily injury** and **property damage** must be caused by an **accident** during the Policy Period . . . . Liability must arise from the ownership, maintenance or use of the **insured watercraft**." Policy § II, ECF No. 42-6 at 13 (emphasis in original).[2]

The Policy contains the following definitions: "'**You**' and '**your**' mean the Named Insured identified in the Declarations." Policy Definitions ¶ 21, ECF No. 42-6 at 10 (emphasis in original). "**Insured person**" means:

    a.    **you**;
    b.    a **family member**;
    c.    a person or organization operating or responsible for the operation of the **insured watercraft** with:
        (1)    **your** direct knowledge and express permission; or

---

[2]    "Bodily injury" is defined by the Policy as "physical injury to the body of a person including resulting death." Policy Definitions ¶ 3, ECF No. 42-6 at 9.

3

>    (2)    the direct knowledge and express permission of **your** spouse, if **you** are a natural person and are legally married.

The definition of "**insured person**" does not include:

a.   a captain or crew member who receives money or other benefits for operating the **insured watercraft;**
b.   a person or organization (including that person's or organization's agents or employees) conducting **marine business**.

Id. at ¶ 8 (emphasis in original). "'**Commercial purpose**' means any use of the **insured watercraft** for which an insured person receives, or intends to receive, money, . . . supplemental income or other economic benefits." Id. at ¶ 4 (emphasis in original). "'**Marine business**' means making, repairing, servicing, towing, chartering, renting, or selling watercraft; or . . . any other commercial marine activity." Id. at ¶ 11 (emphasis in original).

The Policy explicitly excludes coverage for "**bodily injury**, **property damage**, or **loss** . . . [w]hen the insured watercraft is: . . . used for a **commercial purpose** or **marine business**. . . . [or] owned in whole or in part by someone other than **you** our **your spouse**." Policy Exclusions – All Coverages ¶ 1, ECF No. 42-6 at 10. The Policy further excludes coverage for:

**Bodily injury** to:
(1)   **you**;
(2)   a captain or crew member who receives money or other benefits from an **insured person** for operating or providing services to the **insured watercraft**;
(3)   **Bodily injury** or any other payment or obligation to any person eligible to receive any benefits required to be provided by **you**. This includes, but is not limited to . . . workers' compensation . . . or any other state or federal workers' law. . . .

Policy § II, ¶ 3(a), ECF No. 42-6 at 13 (emphasis in original).

On October 7, 2009 Mr. Newsome's son, John Newsome, III (together, with JNI and Mr. Newsome, the "Newsome Defendants"), and Deagose Fertron Robinson ("Mr. Robinson"), a JNI

employee, took the Vessel out on Prestwood Lake in Hartsville, South Carolina. Am. Compl. ¶ 23, ECF No. 11; Newsome Defs.' Answer ¶ 11, ECF No. 18. There was an accident and John Newsome, III, and Mr. Robinson were both thrown from the Vessel. Tragically, Mr. Robinson perished. See Am. Compl. ¶¶ 26–27, ECF No. 11; Newsome Defs.' Answer ¶ 12, ECF No. 18.

Plaintiff filed the instant declaratory judgment action on March 3, 2010. Compl., ECF No. 1. In the current governing amended complaint, Plaintiff sets forth several grounds upon which it contends that the Policy is either void ab initio or that coverage is excluded. See Am. Compl., ECF No. 11. On May 5, 2010, Mr. Robinson's Estate (the "Estate") filed a related wrongful death action against John Newsome, III, in the South Carolina Court of Common Pleas for Darlington County (the "Wrongful Death Action"). See State Ct. Compl., ECF No. 44-2. The Wrongful Death Action was removed to federal court on July 26, 2010 and remains pending. See Robinson v. Newsome, Case No. 4:10-CV-1932-MBS.

## II.     LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Therefore, if the record, when taken as a whole with all justifiable inferences drawn in favor of the non-moving party, could not lead a rational trier of fact applying the relevant substantive law to find for the non-moving party, there is no "genuine issue for trial" and summary judgment should be granted. Matsushita Elec. Indust. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

Although the movant bears the initial burden of demonstrating that summary judgment is appropriate, once a party makes a properly supported motion for summary judgment, the burden shifts to the non-moving party "to set forth specific facts showing that there is a genuine issue for trial." Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 817 (4th Cir. 1995) (citing Anderson, 477 U.S. at 248). Mere denials of the movant's pleading, unsupported allegations, or speculation will not defeat a properly supported motion for summary judgment. See, e.g., Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2008) (citing Matsushita, 475 U.S. at 587); Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Finally, if a party opposing summary judgment fails to address a claim in its opposition briefing, the claim may be deemed abandoned. See Jones v. Family Health Ctr., Inc., 323 F. Supp. 2d 681, 690 (D.S.C. 2003).

### III.    ANALYSIS

Plaintiff filed the instant motion for summary judgment on January 11, 2011, arguing first that, pursuant to the admiralty doctrine of uberrimae fidei, the Policy is void ab initio as a result of certain material misrepresentations made in the Application. See Pl.'s Summ. J. Mot. 10–13, ECF No. 42-1. In the alternative, Plaintiff argues that coverage for all injury, damage, and loss is excluded under the Policy's "different owners" exclusion.[3] Id. at 14. The Newsome Defendants did not file a response in opposition to Plaintiff's motion for summary judgment. The Estate did file a

---

[3] Plaintiff also argued that all coverage was foreclosed by the Policy's "marine business" exclusion; coverage for liability is further excluded under the Policy's "captain and crew" and "workers' compensation" exclusions; liability coverage is limited by the Policy's "named operator endorsement"; and coverage for medical and funeral damages and for physical damages to the Vessel is excluded by additional Policy exclusions. Pl.'s Summ. J. Mot. 13–17, ECF No. 42-1. Because the Court finds that the Policy was void ab initio and that, in the alternative, the "different owners" provision excludes all claims for coverage, it need not and does not reach these additional arguments.

response, but its brief does not address Plaintiff's arguments regarding the doctrine of <u>uberrimae fidei</u> or the "different owners" exclusion.  Instead, the Estate argues first, that this Court should stay its decision on Plaintiff's motion "so that discovery may proceed" in the Wrongful Death Action.  Estate's Resp. 4, ECF No. 44.  Second, the Estate argues that Plaintiff is not entitled to summary judgment, because there is a genuine issue of material fact as to whether the Policy's "marine business," "captain and crew," or "workers' compensation" exclusions apply.  <u>Id.</u> at 4–11.  At the hearing, counsel for the Estate clarified its position, explaining that its request for a stay and other arguments are only relevant if the Court does not find that the Policy was void <u>ab initio</u> or that the "different owners" exclusion applies to bar all claims.

### A.     The Policy Is Void Ab Initio

Under the 245-year-old doctrine of <u>uberrimae fidei</u>, marine insurance contracts are invalidated "on evidence of the assured's material misrepresentations to the underwriter[.]"  <u>Albany Ins. Co. v. Anh Thi Kieu</u>, 927 F.2d 882, 886 (5th Cir. 1991); see also <u>Certain Underwriters at Lloyds, London v. Inlet Fisheries, Inc.</u>, 518 F.3d 645, 650 (9th Cir. 2008) ("<u>Uberrimae fidei</u> was first recognized in 1766 by Lord Mansfield, and was codified in English law in 1906. . . . Justice Story incorporated the rule into American maritime insurance law in 1828[.]") (citations omitted).  The doctrine treats all misrepresentations the same: "It does not matter whether the insured's failure to disclose was due to negligence, mistake, accident, or voluntary ignorance."  <u>Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 922 F. Supp. 577, 580 (M.D. Fla. 1996) (citing <u>Steelmet, Inc. v. Caribe Towing Corp.</u>, 747 F.2d 689 (11th Cir. 1984)).

Plaintiff argues that it is entitled to summary judgment pursuant to the doctrine of <u>uberrimae fidei</u>, based on multiple material misrepresentations contained in the Application upon which

Plaintiff relied in issuing the Policy. For example, the Application identified John Newsome as the sole owner and operator of the Vessel and separately affirmatively confirmed that the Vessel was not owned in whole or in part by anyone else and was not titled in the name of a company or a corporation. The Newsome Defendants, however, admit that the Vessel was in fact purchased by JNI and, since its purchase, always held solely in the name of JNI. Similarly, the Application affirmed that the Vessel would not be used for any business or commercial use and was not being held for sale or consignment, but Mr. Newsome testified that the entire purpose of purchasing the Vessel was to "fix it up a little bit" and "[t]hen sell it and make a nice profit." Newsome EUO 17:9–18, ECF No. 42-2.

Neither the Newsome Defendants nor the Estate challenges Plaintiff's assertion that the doctrine of uberrimae fidei is applicable to the instant action.[4] After carefully considering the record and the relevant authority, this Court finds that the doctrine of uberrimae fidei governs and that material misrepresentations made in the Application, as summarized above, served to invalidate the Policy. Summary judgment in favor of Plaintiff on these grounds is, therefore, proper.

**B.     The Policy's "Different Owners" Exclusion Bars All Coverage**

In the alternative, the Court finds that the Policy's "different owners" exclusion operates to

---

[4]    In Albany Insurance Co. v. Anh Thi Kieu, the Fifth Circuit held the doctrine not applicable in the face of conflicting Texas state insurance law. 927 F.2d at 889–90. The decision now appears to have been an aberration among the circuits. See, e.g., Inlet Fisheries, Inc., 518 F.3d at 652–53 (describing Anh Thi Kieu as an "abrupt[] change[] [of] course," that "disclaim[ed] [the] overwhelming body of precedent both within and without its own circuit" and noting that "[n]ot surprisingly, no other circuit has followed Anh Thi Kieu in the sixteen years since it was decided"); HIH Marine Servs., Inc. v. Fraser, 211 F.3d 1359, 1362 (11th Cir. 2000) ("It is well-settled that the marine insurance doctrine of uberrimae fidei is the controlling law of this circuit.").

exclude coverage for all losses and, therefore, provides an independent basis for granting Plaintiff's summary judgment motion. The exclusion provides, in relevant part: "This Policy does not cover **bodily injury**, **property damage**, or **loss** . . . [w]hen the insured watercraft is . . . owned in whole or in part by someone other than **you** our **your spouse**." Policy Exclusions – All Coverages ¶ 1, ECF No. 42-6 at 10 (emphasis in original). It is undisputed that the Vessel was never owned by Mr. Newsome, the Policy's named insured, or his spouse. As such, the exclusion operates to foreclose any recovery under the Policy and, even were the Policy not void ab initio, summary judgment would be proper on this basis.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that the Policy is void ab initio. In the alternative, the Court finds that the "different owners" exclusion applies to foreclose coverage. The Estate's request that this matter be stayed pending discovery in the Wrongful Death Action is DENIED and Plaintiffs' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

/s/ Margaret B. Seymour
United States District Judge

May 3, 2011
Columbia, South Carolina